**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael Gibson NORTH,**
**Defendant-Appellant.**

**No. 83–1243.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 1984.

Decided Nov. 5, 1984.

Dennis Nerney, Kimberly Reiley, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Diana Samuelson, San Francisco, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, DUNIWAY and SNEED, Circuit Judges.

DUNIWAY, Circuit Judge:

North sold a lot of LSD and gave a little cocaine to an undercover agent. At trial, he claimed entrapment. On appeal, he challenged: (1) a supplemental instruction allowing the jury to consider entrapment separately as to each transaction, (2) refusal of his supplier/co-defendant's request for an entrapment instruction, (3) an instruction about undercover agents, (4) erroneous submission to the jury of extrinsic evidence, and (5) prosecutorial bad faith in adding cocaine charges and resisting discovery. We affirm.

## I. FACTS.

North may or may not have sold large quantities of LSD to Tony Sesso in 1978 to 1980. Sesso subsequently became a government informant. Under disputed circumstances, North and Sesso renewed their acquaintance in 1982. On about August 28, 1982, North flew from California to Chicago, where Sesso introduced him to undercover agent Robert Fanter, to whom North sold about 4,000 50-microgram doses

of LSD. Sesso came to California around September 15. Fanter came to Santa Cruz and bought from North, on September 17, what turned out to be 6,000 doses of LSD for $6,000. There was some discussion of cocaine. On October 15, North sold Fanter about 10,000 doses of LSD for $7,500 and gave him samples of about an ounce of marijuana, a gram of cocaine, and some MDM (an uncontrolled substance). On October 26, North delivered 30,000 doses of LSD to Fanter, and was arrested. The government also arrested North's suspected supplier, one White, and seized from White about 25 grams of cocaine, over a pound of marijuana, and some MDM.

On November 3, a grand jury indicted North and White on three counts of distributing LSD (the September 17, October 15, and October 26 sales), 21 U.S.C. § 841(a)(1), and one count of conspiracy to distribute LSD, 21 U.S.C. § 846. On December 22, the government filed a superceding indictment, adding a count of cocaine distribution against North, a count of cocaine possession with intent to distribute against White, and a count of conspiracy to distribute cocaine against both. After a joint trial, the jury convicted North on all counts except the September 17 LSD sale. The jury did not reach a verdict as to co-defendant White. North appeals.

## II. CONTINUING ENTRAPMENT.

North admitted selling the LSD to Fanter, but testified that Sesso had pressured him into making the whole series of deals. The court gave the jury a standard instruction on entrapment, which focussed on the defendant's previous intent or predisposition to violate the law. *See United States v. Marcello*, 9 Cir., 1984, 731 F.2d 1354, 1356–57.

During its deliberations, the jury asked to rehear the entrapment instruction and specifically whether "entrapment must apply *in toto* or to each individual count." After discussion with counsel and over North's objection, the court instructed:

One, you may find that defendant North was entrapped in the first instance and therefore all criminal acts following were the subject of the initial entrapment;

Or you may find two, you may find that there was no entrapment and therefore none of the acts are subject to the defense of entrapment.

Three, you may find that there was entrapment as to some of the acts, but no entrapment as to other of the acts.

These are questions of fact for you to determine.

The court also repeated the general entrapment instruction.

North's argument is as follows: If he was not predisposed to sell drugs when Sesso induced him to do so in August and September, then as a matter of law he could not have become predisposed to commit the similar and related offenses in October for which the jury convicted him. His acquittal of the September 17 sale, to which his only defense was entrapment, implies a finding that he was not predisposed then to sell LSD. Therefore, because the offenses were all parts of a single course of dealing, and no evidence showed that North's state of mind or disposition changed—the prosecution having argued at trial that North was predisposed all along—either he was predisposed to make all the sales or he wasn't predisposed as to any. Thus, only the first two options specified by the instruction were valid. The third option offered the jury an improper compromise, which it adopted, to North's prejudice.

The government argues that the issue here involved the "tailoring of instructions," to be reviewed for an abuse of discretion. However, whether disposition can arise and entrapment can cease in the midst of a series of drug sales is clearly a matter of law, which we review *de novo*. *See Matter of McLinn*, 9 Cir. (in banc), 1984, 739 F.2d 1395, 1398; *United States v. McConney*, 9 Cir. (in banc), 1984, 728 F.2d 1195, 1201.

The question of whether a factfinder should or may consider entrapment and

predisposition *in toto* or separately as to each charged offense appears to be one of first impression. North relies primarily on the statement in *United States v. Williams*, 2 Cir., 1983, 705 F.2d 603, 618, that: "A defendant's predisposition is not to be assessed 'as of that time when he committed the crime.' Normally, predisposition refers to the state of mind of a defendant before government agents make any suggestion that he should commit a crime." Thus, North argues, the crucial fact was his state of mind before Sesso approached him, not before each sale to Fanter. But in *Williams* the defendant was "ready and willing" to accept the criminal opportunity when it was first presented, and repeated his willingness to commit the crimes throughout the course of events. *Id.* at 619. Thus, *Williams* did not consider whether a disposition to commit an offense that did not initially exist could arise later. The court in *Williams* limited its statement: "normally."

 We do not think that, if North was not initially disposed to sell drugs, he could not, as a matter of law, develop such a disposition during the later course of dealing. He might well have found such dealing so profitable and easy that he thereafter willingly continued it, regardless of Sesso's original inducement. Even if the government induced the sale on August 28, for which North was not charged, and the government was unable to prove beyond a reasonable doubt that it did not entrap North in the sale on September 17, for which he was not convicted, it is still possible, as a matter of law, that North could have freely decided, during the month that passed before the October sales, to traffic in drugs. The initial entrapment, assuming it existed, did not immunize North from criminal liability for subsequent transactions that he readily and willingly undertook.

Whether any initial entrapment extended through some or all of the later transactions was a question of fact that the instruction properly left to the jury. The record suggests that the court's instruc-

tion, and the jury's verdict, were sound. During the month between the September 17 sale and the October sales, North alleged no contact with Sesso, no alleged threats to North's brother, no events implying that Fanter did more than provide apparently favorable opportunities to break the law in October. The escalating volume of trade also suggests willing participation by North. We find the instruction proper.

## III. ENTRAPMENT OF CO–DEFENDANT WHITE.

North argues that the court's rejection of White's entrapment defense was erroneous, and deprived North of "valuable corroborative evidence as to his own defense of entrapment."

 Although the theory of secondary or derivative entrapment may have some merit, see Note, *Entrapment Through Unsuspecting Middlemen*, 95 Harv.L.Rev. 1122, 1128 (1982), we have consistently held that the entrapment defense is available only to defendants who were directly induced by government agents. Even if White could claim entrapment, North would lack standing to assert White's defense. *See United States v. Lomas*, 9 Cir., 1983, 706 F.2d 886, 891; *United States v. Shapiro*, 9 Cir., 1982, 669 F.2d 593, 597–98.

## IV. UNDERCOVER AGENT INSTRUCTION.

 At the government's request and over North's objection, the court instructed the jury about permissible government undercover methods. The instruction reads:

The government has presented testimony of undercover agents involved in its investigation of this case. Indeed, much of the evidence that has been introduced was derived directly or indirectly from the use of these agents.

In drug-related offenses, law enforcement personnel have turned to one of the only practicable means of detection, the infiltration of drug rings and a limited participation in their unlawful present

practices. Such infiltration is a recognized and permissible means of investigation necessary to gather evidence of illegal conduct. An agent does not violate any federal statute or rule or commit any crime in infiltrating the drug enterprise.

The undercover activity may take many forms including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward or pleas based on need, sympathy or friendship. A solicitation, request or approach by law enforcement officials to engage in criminal activity, standing alone, is not an inducement. Law enforcement officials are not precluded from utilizing artifice, stealth and strategem such as the use of decoys and undercover agents in order to apprehend persons engaged in criminal activities, provided that they merely afford opportunities or facilities for the commission of the offense by one predisposed or ready to commit it. They may properly make use of undercover operations, in which they use false names and false appearances. They may properly assume the roles of members of criminal organizations.

North argues that although such an instruction might be proper in a case where the defendant claimed that outrageous government conduct had violated Fifth Amendment due process rights, *see United States v. Russell*, 1973, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366; *United States v. Marcello, supra*, 731 F.2d at 1356–57, it infringed on his entrapment defense. North claims that the instruction might lead the jury to believe that entrapping acts, such as "threats, coercive tactics, harassment," were lawful undercover activities, and that the instruction confused the jury by focussing on the government's conduct rather than the defendant's state of mind. He also argues that the jury's request to rehear the entrapment instruction evidences the resulting confusion.

The instructions clearly distinguished between the issues of improper government conduct and North's predisposition to commit illegal acts. The undercover agent instruction was expressly conditioned on lack of entrapment: law enforcement officials may do various things "provided that they merely afford opportunities or facilities for the commission of the offenses by one predisposed or ready to commit it." The request to rehear the entrapment instruction did not show that the undercover instruction confused the jury, and the acquittal on the September 17 sale belies North's argument that the undercover agent instruction undercut the entrapment defense. Viewing all the instructions together and in the context of the whole trial, the instruction was a proper exercise of the court's discretion. *See United States v. Marabelles*, 9 Cir., 1984, 724 F.2d 1374, 1382–83.

## V. ERRONEOUS SUBMISSION OF DOCUMENT TO THE JURY.

■ The court admitted an affidavit from agent Briggs for the limited purpose of showing probable cause for the arrest and search of co-defendant White. The jury accidentally got it when they retired to deliberate, but sent a note asking whether the exhibit was considered evidence. The judge *sua sponte* answered "yes," but when he met with counsel, they discovered the error and discussed what to do about it. The judge admonished the jury to "disregard anything and everything which appears in that affidavit.... Do not in any way consider any fact that is represented in that affidavit. Do not consider it in your deliberations one way or the other." The court then found that the error was harmless and that the admonition cured any harm.

North argues that there was a reasonable possibility that the error was prejudicial because the affidavit contained information that the court had earlier withheld from the jury as unduly prejudicial, that Stanislaus William White was the assumed name of William Stanley Stewart, "a fugitive from Justice in Canada," described certain of White's dealings with North, and thus may have affected the jury's assessment of North's credibility. The admoni-

tion was not sufficiently forceful, North argues, when weighed against the degree of prejudice that the improper evidence generated. *Cf. United States v. Johnson,* 9 Cir., 1980, 618 F.2d 60, 62.

We hold that, viewed in context, and in light of the instruction, the error was not significant. The information in the affidavit was not inconsistent with North's entrapment defense. Although the error was more prejudicial to White, the jury did not convict him. Giving substantial weight to the trial court's assessment of the effect of the extrinsic evidence, we agree that there was no reasonable possibility that it could have affected the verdict. *See United States v. Halbert,* 9 Cir., 1983, 712 F.2d 388, 389. The admonition cured what prejudicial impact there might have been. *See United States v. Bagley,* 9 Cir., 1981, 641 F.2d 1235, 1241.

## VI. PROSECUTORIAL MISCONDUCT.

North moved to dismiss for vindictive prosecution because the government added cocaine charges in a superseding indictment after North refused to cooperate in the prosecution of White. The government responded that it had added the cocaine charges after laboratory reports had confirmed that the seized substance was in fact cocaine, and also because North had chosen not to cooperate. The court denied North's motion.

■ We affirm the court's denial of North's motion to dismiss under either the abuse of discretion or clear error standard, whichever applies. *See United States v. Gann,* 9 Cir., 1984, 732 F.2d 714, 724. The government may, in the course of plea bargaining, offer to reduce charges or threaten reindictment under more serious charges, and it may make good on either promise. *See Bordenkircher v. Hayes,* 1978, 434 U.S. 357, 363–65, 98 S.Ct. 663, 667–69, 54 L.Ed.2d 604; *United States v. Spiesz,* 9 Cir., 1982, 689 F.2d 1326, 1328–29; *United States v. Burt,* 9 Cir., 1980, 619 F.2d 831, 836; *United States v. Allsup,* 9 Cir., 1978, 573 F.2d 1141, 1143. It may do the same in seeking cooperation in related

prosecutions. The prosecutor's uncontradicted declaration stated legitimate, nonvindictive reasons for the added charges.

 The trial court also denied North's motions to dismiss because the government did not cooperate in discovery. Although the record suggests that both sides were less than wholeheartedly cooperative, the trial court did not abuse its discretion in finding that the government complied with legal requirements in each disputed instance. *See United States v. Balk,* 9 Cir., 1983, 706 F.2d 1056, 1060.

Affirmed.