UNITED STATES of America, Appellee,

v.

Maurice VAUGHN, Appellant.

No. 95–3149.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1996.

Decided April 12, 1996.

550

Reita P. Pendry, Washington, DC, Chief Assistant Federal Public Defender, argued the cause, for appellant. With her on the brief was A.J. Kramer, Federal Public Defender.

E. Vaughn Dunnigan, Washington, DC, Assistant United States Attorney, argued the cause, for appellee. With him on the brief were Eric H. Holder, Jr., United States Attorney, John R. Fisher and Richard L. Edwards, Assistant United States Attorneys. Elizabeth Trosman entered an appearance.

Before: SENTELLE, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

Concurring opinion filed by Circuit Judge ROGERS.

RANDOLPH, Circuit Judge:

Maurice Vaughn allegedly sold crack cocaine to an undercover Drug Enforcement Administration agent on April 7, May 5, June 1, and August 20, 1992. Vaughn was indicted for the May and June sales in 1994. After a four-day trial in the United States District Court for the District of Columbia, the jury found him not guilty. Vaughn and the government agree that a rational jury could have reached a decision to acquit only if it accepted Vaughn's claim that he was entrapped into making the May and June sales.

In 1995, the government obtained a new indictment charging Vaughn with the April and August sales.[1] Vaughn moved to dismiss the indictment on the ground that it violated the collateral estoppel component of the Double Jeopardy Clause of the Fifth Amendment. U.S. CONST. Amend. V; *see Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The district court denied the motion. In this pre-trial appeal, *see Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977), Vaughn argues that the jury, in accepting his entrapment defense for the May and June sales, necessarily decided that he lacked the criminal intent required for a conviction for the April and August sales.

[1]. The government initially decided not to prosecute Vaughn for the April and August sales for fear of revealing the identity of a government informant who was present when those sales were alleged to have occurred. The informant's identity was revealed shortly before Vaughn's 1994 trial and therefore was no longer an issue for the government when it sought an indictment for the April and August sales.

■ To prevail on a collateral estoppel double jeopardy motion, a defendant must "demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990). As to the April 7 sale, the question therefore is whether the jury must have "actually decided" that Vaughn was not predisposed to sell crack at that time. We think the jury decided no such thing. In finding that Vaughn was not predisposed to sell crack in May and June, the jury did not even have to consider Vaughn's state of mind on April 7.

The jury heard extensive testimony about a series of conversations between Vaughn and the undercover agent beginning on April 22 and culminating on May 5, when Vaughn engaged in one of the sales charged in the first indictment. From that evidence alone, the jury could have concluded that Vaughn was not predisposed to sell crack in May and June. On the other hand, the jury heard little evidence of the sale on April 7. The government introduced no extrinsic evidence of the sale, and Vaughn's testimony about it was equivocal: on direct examination, Vaughn indicated that he did not sell drugs to the agent on April 7; on cross-examination, he seemed to acknowledge that the agent bought drugs in his presence on April 7 but denied that he was the seller. True, the government stated in closing argument that "Mr. Vaughn sold on April 7th," but the arguments of counsel are not evidence. *See, e.g., United States v. Boyd*, 54 F.3d 868, 872 (D.C.Cir.1995). And yes, in instructing the jury, the judge referred to "the fact, if it is a fact, that the defendant may have committed prior offenses of a similar character." But the court's comment was hardly conclusive, and the jury certainly could have understood

it as a reference to Vaughn's admission at trial that he had sold crack before April 1992.[2] Given the scant evidence the jury had before it, no one can say the jury necessarily concluded that Vaughn sold crack to the agent on April 7, let alone that Vaughn did so as a result of government inducement and not his own predisposition.

Even if the jury had not heard evidence of Vaughn's conversations with the agent in late April and early May, we still would have no idea what—if anything—the jury thought about Vaughn's state of mind on April 7. The jury could have thought that Vaughn was entrapped into selling crack on April 7; it could have thought that he was predisposed to sell crack on April 7 but had a change of heart before May 5; it could have thought that he did not sell crack on April 7; or it could have given April 7 no thought at all. The trial judge did not instruct the jury to reach any kind of conclusion about the events of April 7. The lack of such an instruction is not necessarily dispositive, *cf. Ashe v. Swenson*, 397 U.S. at 439, 90 S.Ct. at 1191–92, but it does strengthen our view that the jury may not have decided anything about Vaughn's state of mind on April 7.

■ Vaughn's argument regarding the August sale requires separate analysis. The jury heard absolutely nothing of this alleged transaction. Thus, it had no occasion to consider whether Vaughn was predisposed to sell crack in August. Nonetheless, Vaughn claims that when the jury decided he was entrapped into selling crack in May and June, it also necessarily decided that he lacked the criminal intent to sell crack in August. To make this stretch, Vaughn relies on the statement in *Jacobson v. United States*, 503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), that once a defendant

2. The judge instructed the jury:

In determining whether the defendant was ready and willing to commit the crimes charged, you need not find that he was involved in any prior offenses or criminal conduct. Willingness to commit the crimes may be shown in many ways, including by evidence of the defendant's prior similar conduct....

If evidence of prior conduct of the defendant, which may be criminal, is introduced to show his willingness to commit the alleged offenses, you

may consider such evidence only in connection with your determination of the defendant's readiness to commit the offenses. It is not evidence that he actually committed the crimes for which he is now on trial.

Moreover, the fact, if it is a fact, that the defendant may have committed prior offenses of a similar character, does not, by itself, require you to conclude that he was ready and willing to commit the offenses with which he is now charged.

shows the government induced him to break the law, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Id.* at 549, 112 S.Ct. at 1540. From this, Vaughn concludes that once a defendant is entrapped into committing one offense, he enjoys *carte blanche* to commit an infinite number of later offenses. Or, as Vaughn puts it, "where there is a series of government-induced acts ... [if] the defendant was entrapped at the beginning of the series ... the entrapment applies to the entire series."

*Jacobson* does not compel such an absurd result. *See United States v. Mitchell,* 67 F.3d 1248, 1256 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 971, 133 L.Ed.2d 891 (1996); *United States v. Beal,* 961 F.2d 1512, 1517 (10th Cir.1992). *Jacobson* did not involve, as Vaughn claims, a "series of government-induced acts." Rather, it involved a series of government enticements, but only one government-induced act: after two-and-a-half years of government encouragement and solicitation, Jacobson ordered and received a single pornographic magazine. 503 U.S. at 543–47, 112 S.Ct. at 1537–40. To establish Jacobson's predisposition, the government introduced Jacobson's statements responding to some of the government's earlier solicitations. *Id.* Reversing Jacobson's conviction, the Supreme Court held that such comments—made in direct response to government suggestions—"cannot be enough to establish beyond reasonable doubt" that a defendant was "predisposed, prior to the Government acts intended to create predisposition, to commit the crime...." *Id.* at 553, 112 S.Ct. at 1543.

■ In light of the facts of *Jacobson,* we read the Court's direction that the government must prove a defendant's disposition "prior to first being approached by Government agents," *id.* at 549, 112 S.Ct. at 1540, to mean only that the government must prove that the defendant's disposition was "independent and not the product of the attention that the Government" directed at the defendant. *Id.* at 550, 112 S.Ct. at 1541. That is, because the government must show that its encounters with the defendant before inducing the charged offense did not " 'implant in the mind of an innocent person the *disposition* to commit the alleged offense,' " *id.* at 553, 112 S.Ct. at 1543 (*quoting Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)) (emphasis in *Jacobson* ), the government "is in no position to object to evidence of the activities of its representatives in relation to the accused." *Id.* at 549 n. 2, 112 S.Ct. at 1540 n. 2 (*quoting Sorrells,* 287 U.S. at 451, 53 S.Ct. at 216). The government may attempt to prove disposition by introducing evidence of the defendant's actions after a government agent approached him, but "under *Jacobson* predisposition does not count if it is itself the product of improper government conduct." *United States v. Acosta,* 67 F.3d 334, 339 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 965, 133 L.Ed.2d 887 (1996).

Hence, *Jacobson* allows a jury to consider the possibility that a defendant's disposition to commit a crime changed over time. Sinners may become saints and saints may become sinners. Nothing is necessarily permanent about either state. A person might be disposed to commit a crime one day and not disposed to do so some time later. *See Sherman v. United States,* 356 U.S. 369, 375–76, 78 S.Ct. 819, 822–23, 2 L.Ed.2d 848 (1958). Vaughn acknowledged as much at trial when he testified that he "indulged" in the "sale of cocaine" before or during 1991 but that he was no longer "into that" in 1992. Conversely, a person who is not disposed to commit a crime today might develop a disposition to do so at some point in the future. *See Mitchell,* 67 F.3d at 1254. The impetus for the change may come from any number of sources. If the jury finds that it comes solely from government agents, *Jacobson* precludes a conviction. *See Beal,* 961 F.2d at 1517. But if it comes from other sources—from friends or family, *see* WILLIAM SHAKESPEARE, MACBETH, Act I, Sc. 7; or from within the individual himself—*Jacobson* is no bar. We have no idea what—if any—changes of heart Vaughn might have undergone here. But as we have just explained, if Vaughn's jury gave any thought to his criminal intent after the June sale—and we cannot imagine why it would have—it certainly could have concluded that there might be a time in the future when

Vaughn would be disposed to sell crack without any inducement from the government. Vaughn has failed to show that the jury necessarily decided that he lacked the criminal intent to make the August sale. He complains that the government has yet to produce any evidence indicating that the August sale was an "independent act[ ] subsequent to the inducement" rather than a "part of a course of conduct which was the product of the inducement." *See Sherman*, 356 U.S. at 374, 78 S.Ct. at 822. *If* Vaughn raises an entrapment defense for the August sale, and *if* he succeeds in making the requisite showing of inducement, the government may need such evidence to convict him. But the government does not need that evidence to try him. For now, the only burden is on Vaughn, *see Dowling*, 493 U.S. at 350, 110 S.Ct. at 673, and he has not met it.

The order of the district court is

*Affirmed.*

ROGERS, Circuit Judge, concurring:

Although I join the majority's conclusion that Vaughn failed to demonstrate that the jury at his first trial actually decided that if he sold drugs on April 7 and August 20, the government entrapped him into doing so, I write separately because the majority discounts the importance of Vaughn's resistance to the government agent's inducements on April 22 and after. Majority opinion at 551. Without evidence of that resistance, no rational jury could find, on the basis of the other evidence at Vaughn's first trial, that he was entrapped on May 5 without necessarily implying that he was not predisposed to sell drugs on April 7. The majority, by failing to give sufficient weight to this crucial evidence, in my view, misconstrues what it means for a jury to "actually decide" an issue for collateral estoppel purposes.

The majority relies in part on the fact that the jury was not instructed to reach any conclusion about the alleged April 7 sale, and

therefore had only to decide that "Vaughn was not predisposed to sell crack in May and June." *Id.* at 551. The majority notes that even if there had been no evidence of an intervening change in Vaughn's disposition, the jury might have thought that "he was predisposed to sell crack on April 7 but had a change of heart before May 5." *Id.* at 551. Without any evidence to support that theory, however, only an irrational jury could have come to such a conclusion. The majority also points out that the jury may not have come to any conclusion at all concerning the April 7 sale. Although the majority is correct that Vaughn must show that the issue in question "was actually decided in the first proceeding," *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990), it is not enough to posit a scenario in which the jury did not determine the question at issue: "[C]ourts must 'examine the record of the prior proceeding ... and conclude whether a *rational* jury *could have* grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.'" *Id.* (emphasis added) (quoting *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)). Thus, if there were no rational way to reconcile the jury's verdict with a finding that Vaughn was predisposed to sell crack when first contacted by the agent on April 7, it would follow that the jury had "actually decided" a dispositive issue in the instant case, barring the government from trying Vaughn for the April 7 sale.[1]

Without the evidence from April 22 and the days that followed, Vaughn could persuasively argue that no rational jury could have simultaneously found that he was entrapped into making the May 5 sale while finding that he was predisposed to sell crack when first approached on April 7. The jury heard that the agent first met Vaughn on April 7. The agent bought drugs in Vaughn's presence, although Vaughn insisted that he did not participate in the sale. The agent then

---

1. The majority correctly notes that "no one can say the jury necessarily concluded that Vaughn sold crack to the agent on April 7." Majority opinion at 551. I do not understand the majority to consider this fact dispositive, for if the jury had concluded that Vaughn was not predisposed to sell crack prior to being induced on April 7, Vaughn would have established, by collateral estoppel, a complete legal defense to the offense charged in count one of the instant indictment, and that count would have to be dismissed.

asked Vaughn if he would sell the agent a large quantity of crack at a later date. Vaughn admitted that he sold crack to the agent on May 5. If this was all that the jury had heard, the only way it could rationally have found that Vaughn had been entrapped into making the May 5 sale would have been to conclude that he had not been predisposed to sell crack prior to the agent's April 7 inducement. The issue, after all is predisposition: whether, in the Supreme Court's words, "the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Jacobson v. United States*, 503 U.S. 540, 549, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 174 (1992). If Vaughn were not "predisposed" to make the May 5 sale, it could only mean, assuming there was no evidence regarding intervening events, that he was not predisposed as of the government's attempt to induce him to sell crack on April 7. Thus, without such intervening evidence, a rational jury would have actually decided a dispositive issue in the instant case by its verdict in the first case, notwithstanding the fact that it was not asked to render any decision about the events of April 7. *See Ashe*, 397 U.S. at 444 & n. 9, 90 S.Ct. at 1194 & n. 9.

Therefore, to determine what the jury "actually decided" under *Dowling*, we must carefully examine the evidence and jury instructions from the first trial. Under *Ashe*, 397 U.S. at 445, 90 S.Ct. at 1195, the court must presume that the jury acted rationally. In that case the jury was not instructed to make any finding with regard to the robbery of Roberts, *id.* at 439 nn. 2–3, 90 S.Ct. at 1191–92 nn. 2–3, yet the Supreme Court held that the government was collaterally estopped from prosecuting the defendant for robbing Roberts after the jury had acquitted the defendant of robbing Knight, another victim of the same robbery. *Id.* at 445, 90 S.Ct. at 1195. The only "rationally conceivable" explanation of the verdict in light of the evidence at the Knight trial was inconsistent with the defendant having robbed Roberts. *Id.* Therefore, even though the jury in the instant case was not instructed explicitly to

find anything about April 7, what it had to say about May 5 could, depending on the evidence before it, imply findings with respect to April 7. Only upon examining the evidence that was before the jury does it become clear that the verdict did not necessarily imply a finding of no predisposition as of April 7, much less as of August 20.

The cross-examination of the agent and Vaughn's direct examination as well as the defense opening and closing arguments focused on the agent's repeated inducements on and after April 22. There was also ample evidence from which the jury could have concluded that Vaughn resisted the agent's inducements for a period of time after that date. Vaughn told the jury that the agent called him repeatedly to request crack. According to Vaughn, he did not take any steps toward obtaining crack to sell to the agent, but kept "stringing him along" by promising to make the sale. Vaughn explained that he was both afraid of the agent's cousin, who had a reputation for violence, and attracted by the agent's generosity in buying him a meal and promising to introduce him to women. The agent confirmed that Vaughn twice promised to sell him crack, but on one occasion did not have the drugs at the appointed time and on the other did not even show up at all.

In other words, there was evidence from which a jury could rationally conclude that Vaughn, a purportedly reformed drug dealer, readily sold crack to the agent when first approached on April 7, but that he thought better of it on further reflection and had to be entrapped into making a second sale on May 5. Not only could the jury reasonably rely on the post-April 22 evidence to show lack of predisposition, the jury could rationally have regarded April 22 as the beginning of government inducement.[2] The district court, correctly in light of *Jacobson*, informed the jury that it must consider whether Vaughn was disposed to commit the offense "before the inducement." Thus, considering the evidence and the instructions, the jury could have concluded that the government first

---

2. The jury was instructed that "a request by law enforcement officials to engage in criminal activity, standing alone, is not an inducement." *Cf.*

*United States v. McKinley*, 70 F.3d 1307, 1314 (D.C.Cir.1995) (citing *United States v. Ellis*, 23 F.3d 1268 (7th Cir.1994)).

induced Vaughn to make the May 5 sale on April 22 and that Vaughn was not disposed to make the sale before that inducement. Because the jury could rationally have so found and acquitted Vaughn of the May 5 sale on that basis, the government is not collaterally estopped from contesting Vaughn's predisposition to make the April 7 sale. And, for the reasons set forth by the majority, the government is not collaterally estopped as to the August 20 sale. Accordingly, the district court correctly ruled that the Fifth Amendment does not bar Vaughn's second trial.[3]

---

**3.** The government states in its brief that "upon request, it would be appropriate for the district court in [Vaughn's] second trial to instruct the jury that it must accept as conclusive the entrapment findings of the previous jury." Appellee's Brief at 12.