UNITED STATES of America, Appellee,

v.

Victor KHUBANI, Defendant-Appellant.

No. 797, Docket 85–1408.

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1986.

Decided May 27, 1986.

Robert Gage, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Kenneth Roth, Asst. U.S. Atty., New York City, of counsel), for appellee.

Frederick P. Hafetz, New York City (Goldman & Hafetz, New York City, Lawrence S. Goldman, Jay K. Goldberg, of counsel), for defendant-appellant.

Before LUMBARD, PIERCE and ALTIMARI, Circuit Judges.

LUMBARD, Circuit Judge:

Victor Khubani, appeals from a judgment entered on November 4, 1985, in the District Court for the Southern District after a six-day jury trial before Robert L. Carter, *Judge*, convicting him of one count of bribery in violation of 18 U.S.C. § 201(b). Khubani was sentenced to two years' imprisonment, with all but four months of his period of confinement to be served in a half-way house. Judge Carter also imposed a $20,000 fine and a one-year term of probation, during which time Khubani is to perform 250 hours of community service. Khubani asks that his conviction be reversed arguing that Judge Carter improperly instructed the jury on entrapment. We affirm.

In the spring of 1983, Richard Warren, an Internal Revenue Service ("IRS") field auditor, was assigned to conduct an audit of the Tandoor Restaurant, located in New York City at 40 East 49th Street and owned by Ranju Bhawnani and appellant Khubani. On October 11, 1983, Warren notified Khubani by telephone that the audit was being expanded to include audits of the personal income tax returns of Khubani and Bhawnani for the years 1980, 1981, and 1982. Warren asked Khubani to arrange a meeting between Warren and Khubani's accountant. Warren testified at trial that Khubani asked if Warren would first come to Khubani's office at Azad International, an electronics importing firm owned by Khubani, before Khubani spoke to his accountant. Warren agreed and a meeting was arranged for October 18, 1983. Khubani testified at trial that during the October 11, 1983 telephone conversation he and Warren arranged a meeting for October 18, 1983, but that, contrary to Warren's testimony, Khubani did not mention a private meeting and, in fact, he specifically told

Warren that he wanted his accountant to be there.

After this conversation, Warren reported to his supervisor that he believed "Khubani was making a bribe overture." Warren then conferred with the Inspection Division ("Inspection"), the IRS's internal security division, and was told not to accept any bribe offer but to stall Khubani, indicate that whatever was being offered would be picked up at a later time, and report back to Inspection immediately.

Warren testified that, at the October 18, 1983 meeting, Khubani asked Warren to forget about the personal audit and Warren refused. Khubani responded by offering to "take care" of Warren and then pointed to various items of electronic equipment. Warren did not take anything, explaining that he did not want people to see him carrying large boxes out of Khubani's office. He left saying he would be back in the late afternoon. Khubani testified that Warren arrived late at the October 18, 1983 meeting, approximately five or ten minutes after Khubani's accountant had left, and that it was Warren who solicited the bribe.

Warren immediately reported the incident to Inspection which instructed him to pose as a corrupt IRS agent. Warren then placed a recorded telephone call to Khubani in which they discussed Warren's difficulty with being seen carrying boxes out of Khubani's office. The two agreed to meet again on October 21, 1983 to discuss the matter further.

At the October 21, 1983 meeting at Azad International, Warren wore a concealed recording device. Khubani renewed his offer to Warren of electronic goods if Warren would forget about the audit. Warren, however, reiterated his concern with being seen leaving Khubani's office with large boxes and refused to accept the merchandise. Khubani inquired as to what he could do and Warren responded that it was up to Khubani. Khubani then suggested, "Suppose I open my wallet?" Khubani gave Warren $400 and some electronic items and Warren agreed not to audit Khubani's

1980, 1981, and 1982 personal income tax returns.

Although Warren had ostensibly agreed not to audit Khubani, he continued to pursue the other audits. Warren telephoned Bhawnani on November 7, 1983, and arranged a meeting for November 15, 1983, to begin the audit of Bhawnani's personal returns. On November 10, 1983, Bhawnani called Warren and asked him to speak with Khubani regarding the audit of Bhawnani's returns. In a conversation recorded that same day, Khubani asked Warren whether there was any way Warren could help out Bhawnani. Khubani continued, "One hand washes the other, right?" They then agreed to meet at Azad International on November 14, 1983.

At the recorded November 14, 1983 meeting, Khubani asked Warren (1) to dispense with the audit of Bhawnani; (2) to dispense with the audit of the Tandoor Restaurant; and (3) to issue a false "no change" report on Khubani's personal returns. The "no change" report Khubani sought for himself is more favorable than no audit because it indicates that an audit was in fact conducted and everything on the return was determined to be accurate. Most significantly, once a "no change" report is issued, the return is normally never audited again while a return that is simply not audited may be reviewed later. Khubani gave Warren $700 in cash and Warren agreed to Khubani's three requests.

On November 23, 1983, Warren met with Bhawnani at the Tandoor Restaurant. During the recorded conversation, Bhawnani stated that he had paid $200 of the $700 November 14, 1983 bribe. Warren indicated that more was necessary for him to forget the audit of Bhawnani's personal returns and Bhawnani gave Warren an additional $200.

On July 23, 1985, a four-count superseding indictment was filed [1] charging: (1) Khubani and Bhawnani with conspiracy to defraud the United States Government and to bribe an IRS agent (count 1); (2) Khubani with the October 21, 1983 bribe of $400 (count 2); (3) Khubani and Bhawnani with the November 14, 1983 bribe of $700 (count 3); and (4) Bhawnani with the November 23, 1983 bribe of $200 (count 4).

The trial of both defendants began on July 26, 1985. At the end of the Government's case, Judge Carter dismissed Count One, the conspiracy count. The remaining three substantive counts were submitted to the jury on August 2, 1985.

Khubani and Bhawnani asserted the defense of entrapment. Judge Carter charged the jury on entrapment,[2] but did

---

1. The original indictment, differing only slightly from the superseding indictment and charging the same counts, had been filed on May 31, 1985.

2. Judge Carter initially instructed the jury on entrapment as follows:

Now, the defendant, both defendants, assert as a defense that they were the victims of entrapment by an agent of the government.

The word entrapment that I have just used is a legal term. It has a technical meaning, not that of popular speech or colloquial ordinary usage. Therefore, I must explain the word and meaning of the entrapment as it is used in the law.

The function of law enforcement is not only the prevention of crime but also the detection and apprehension of criminals. Manifestly, the function does not include the manufacturing of crime. The defense of entrapment is based upon the policy of the law not to ensnare or entrap innocent persons into the commission of a crime. But a line must be drawn between the entrapment of the unwary innocent and the trap for the unwary criminal.

A basic feature of entrapment is that the idea or design of committing the crime originated with the law enforcement officer rather than with the defendant; that the defendant has no previous disposition, intent or purpose to commit the alleged offenses and that the law enforcement officer or government employee implanted in the mind of an innocent person the disposition to commit the alleged offense and instigated and incited its commission in order that the defendant might be arrested and prosecuted.

If you find that an agent or employee of the government merely afforded a favorable opportunity or facilities to the defendant for the commission of the alleged crime, such conduct on the part of the government does not constitute entrapment. Entrapment would occur only if you find that the government agents induced the defendant to commit the crimes charged in the indictment and that the

not give Khubani's requested charge on this issue which stated that if entrapment were found as to the October 21, 1983 bribe (count 2), then the Government must prove beyond a reasonable doubt that the November 14, 1983 bribe (count 3) was not the result of the first entrapment.

After two hours of deliberations, the jury sent the court a note which read "[i]f we find Kubani [sic] not guilty because of entrapment on Count # 2, do we have to find him not guilty on Count # 3?" After discussing the matter with the attorneys, Judge Carter responded to the note as follows:

I think I tried to explain to you in my charge that you have to consider each count separately and if you deal with count 2 then you go into count 3 and you consider the facts and the circumstances that you regard were relevant to that count and then make your determination. They have to be dealt [with] in that way.

After this response, a side bar conference was held in which Khubani's counsel stated that he did not believe the supplemental instruction fully apprised the jury "that they can consider all of the evidence in the case.... I think it connotes that they are limited to an examination of the circumstances surrounding the date of November 14." Accordingly, Khubani's counsel asked if it would "be possible to amplify it to let them know they can consider all evidence?" Judge Carter then instructed the jury:

I want you to understand when I said that you can consider the evidence—that they are separate counts—and you consider the evidence relevant—if you reach

a conclusion on one count, consider the evidence relevant to the next count. You start separately. What I meant was that you consider all of the evidence that you regard as being relevant and you consider all the evidence that you regard as being relevant when you consider any count to the indictment.

Before the jury continued its deliberations, the court responded to other jury notes and received a not guilty verdict as to Bhawnani on Counts Three and Four.

Later that same day, the jury requested to hear the definition of entrapment and Judge Carter reread his initial charge on the subject. Thereafter, the jury sent a note that indicated it was deadlocked on the counts against Khubani and Judge Carter delivered a modified *Allen* charge. At 6:35 p.m., a not guilty verdict was returned as to Khubani on Count Two.

Jury deliberations resumed the following Monday, August 5, 1983. At noontime, the court received a note in which the jury asked two questions: (1) "[i]f the defendant had predisposition on November 14, does that preclude defense of entrapment?" and (2) "[d]oes the phrase 'create the facility' permit a government agent to suggest that a bribe be given?"

With regard to the first question, Khubani's counsel stated:

Your Honor, our position is ... that the predisposition, as your Honor charged it, refers to the defendant's state of mind prior to the time he interacted with the agent, and it is based on his disposition prior to any meeting.

criminal conduct of the defendant was a product of government activity.

If you find any credible evidence creating the reasonable possibility that a government agent or employee instigated and incited or otherwise induced the defendant to commit the crimes charged, then the government must prove beyond a reasonable doubt that such inducement was not the cause or creator of the crime, that is, that the defendant had been predisposed and willing to commit the crime in the first place.

If the prosecution has satisfied you beyond a reasonable doubt that the defendant was ready and willing to commit the offense

charged, but was awaiting a favorable opportunity to commit the offense, then you may find that the inducement, if any, which brought about the actual offense was no more than providing what appeared to the defendant to be a favorable or timely or convenient opening or facility for the criminal activity in which that defendant may have preferred to engage and in such circumstances you may find that the government agent has not seduced an innocent person or persons but has only provided the means for the defendant to effectuate or realized [sic] his own then existing purpose.

Indeed, the word predispositioned [sic], prefix "pre", means before he meets with the agent, so I differ strenuously with [Assistant United States Attorney] Gage's view, and I think the jury has to consider everything that occurred prior to November 14.

Just before the judge charged the jury in response to the note, Khubani's counsel reasserted his position:

Your Honor, I would ask that you tell the jury that they must consider all the actions of the agents in the totality of the case and not deal with November 14 in a vacuum.

Judge Carter then responded to the jury's first question as follows:

If you find, based upon an evaluation of all the evidence, that there was [a predisposition on November 14], of course, it precludes the defense of entrapment. The issue of whether you find the predisposition, you have to look at all the evidence.

Thereafter, Judge Carter addressed the jury's second question regarding the phrase "create the facility." The court charged, in substance, that the jury should consider (1) whether, based on the totality of the circumstances, Warren induced Khubani to commit the crime charged, and (2) if the answer to (1) is yes, whether the government has proven beyond a reasonable doubt that this "inducement was not the cause that created the crime" but that "the defendant had been predisposed and willing to commit the crime." Khubani's counsel noted an exception to the court's response to the first question. Shortly after this supplemental charge, the jury found Khubani guilty on Count Three.

■ The principal issue presented for the first time in this circuit is whether a finding of entrapment as to one of the crimes charged in an indictment precludes a finding of guilt as to similar subsequent crimes also charged. Khubani relies heavily on this court's decision in *United States v. Williams*, 705 F.2d 603 (2d Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983), to support his position

that the Count Two (October 21 bribe) acquittal requires reversal of the Count Three (November 14 bribe) conviction. *Williams* involved an appeal from an Abscam conviction wherein the district court had charged the jury to consider the defendant's predisposition at the time of the commission of the crime. We held this charge to be erroneous, though harmless, and gave the following instructions concerning predisposition:

A defendant's predisposition is not to be assessed "as of the time when he committed the crime." Normally, predisposition refers to the state of mind of a defendant before government agents make any suggestion that he should commit a crime.

*Williams*, 705 F.2d at 618. Essentially, Khubani now argues that *Williams* teaches that predisposition should only be measured prior to any governmental suggestion. Assuming this to be true, Khubani contends that because the jury found entrapment—and therefore necessarily found no predisposition—as to the October 21 bribe, it is not possible, as a matter of law, to convict him—and thereby implicitly find predisposition—as to the November 14 bribe.

Common sense persuades us that this is too broad an interpretation of the *Williams* case. Limiting examination of defendant's state of mind to the period prior to any governmental contact ignores the possibility that the defendant could become predisposed to commit the crime after the government's first contact. A defendant "might well have found [his crime] so profitable and easy that he thereafter willingly continued it, regardless of [the] original inducement." *United States v. North*, 746 F.2d 627, 630 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985). We agree with the Ninth Circuit's view that an initial entrapment does not "immunize [one] from criminal liability for subsequent transactions that he readily and willingly undertook." *Id.* Whether an initial entrapment extends through a series of crimes is, therefore, not a question of law, but a question of fact for

the jury. Of course the jury should be instructed in cases such as this that they must find as to each alleged offense whether the defendant is guilty beyond a reasonable doubt. We believe, from consideration of the entire charge and supplemental charge, that the jury was so advised.

Khubani argues that even if there is a fact issue as to the second entrapment, Judge Carter's supplemental instructions prevented the jury from considering Khubani's state of mind before Warren first suggested criminal activity and instead centered the jury's attention regarding predisposition on the time of the crime, November 14, in violation of *Williams*. We disagree. Judge Carter repeatedly emphasized that "all the evidence" must be considered when determining defendant's predisposition. "All the evidence" clearly includes evidence of defendant's predisposition prior to Warren's initial suggestion of criminal activity. Moreover, the jury had already demonstrated that it was focusing on defendant's predisposition prior to any governmental suggestion of criminal conduct when it sent the court the note which read "[i]f we find Kubani [sic] not guilty because of entrapment on Count # 2, do we have to find him not guilty again on Count # 3?" There also, Judge Carter stated simply that, as to Count Three, the jury should "consider the facts and the circumstances that you regard were relevant to that count...." Judge Carter's instructions did not in any way preclude consideration of defendant's state of mind before the October 21 bribe and the fact that the jury had already concluded that defendant had no predisposition to commit bribery in October, 1983. Indeed, if anything, the supplemental instructions invited consideration of Khubani's state of mind before October 21.

Although this court stated in *Williams* "[n]ormally, predisposition refers to the state of mind of a defendant before government agents make any suggestion that he should commit a crime," 705 F.2d at 618, the qualifying word "normally" indicates that this rule is not applicable to all situations. *Williams* did not involve the situation presented herein where the predisposition to criminal activity did not exist before the first encounter with government agents but where it may have arisen thereafter. *Williams* involved an individual who was predisposed to commit the crime before any contact with government agents and, therefore, the court did not consider the possibility that, although one might not be initially predisposed to commit a crime, he might at some later time become predisposed. Accordingly, *Williams* is not controlling.

Finally, we note that Judge Carter's supplemental instructions complied with defense counsel's contemporaneous request that the jury be told "that they can consider all of the evidence in the case ... [and] that they must consider all the actions of the agents in the totality of the case and not deal with November 14 in a vacuum." Although Judge Carter did not give Khubani's original requested charge that a finding of entrapment as to the October 21 bribe required proof beyond a reasonable doubt that the November 14 bribe was not the result of the initial entrapment, Judge Carter's initial and supplemental instructions, viewed in their entirety, adequately conveyed the requirements for a finding of entrapment.

Judgment affirmed.